# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

DIANA LYNN WEST, )
 )
    Plaintiff, )
 )
v. )
 )
ANDREW M. SAUL, ) Case No. CIV-19-469-SM
Commissioner of Social )
Security Administration, )
 )
    Defendant.

## MEMORANDUM OPINION AND ORDER

Diana Lynn West (Plaintiff) brings this action for judicial review of the Commissioner of Social Security's final decision that she was not "disabled" under the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). The parties have consented to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). Docs. 3, 7.

Plaintiff maintains the ALJ committed legal and factual error in misapplying the treating physician rule and SSR 12-2p and in evaluating her fibromyalgia and subjective complaints of pain. Doc. 10, at 5-14. After a careful review of the record (AR), the parties' briefs, and the relevant authority, the court reverses the Commissioner's decision. *See* 42 U.S.C. § 405(g).[1]

---

[1]     Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the Administrative Record will refer to its original pagination.

## I. Administrative determination.

### A. Disability standard.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just h[er] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

### B. Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that [s]he can no longer engage in h[er] prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

**C. Relevant findings.**

**1. Administrative Law Judge's findings.**

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis to decide whether Plaintiff was disabled during the relevant timeframe. AR 17-27; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). The ALJ found Plaintiff:

(1) had not engaged in substantial gainful activity from the alleged onset date of May 20, 2016;

(2) had the severe impairments of obesity, other unspecified arthropathies, and affective disorder;

(3) had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(4) had the residual functional capacity (RFC)[2] for sedentary work with additional restrictions;

(5) was unable to perform any past relevant work, but could perform jobs that exist in significant numbers in the national economy such as machine folder, ticket counter, and nut sorter; and thus

(6) was not disabled between the alleged onset date and May 18, 2018.

AR 18-27.

---

[2] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).

### 2. Appeals Council's findings.

The Appeals Council denied Plaintiff's request for review, so the ALJ's decision is the Commissioner's final decision. *Id.* at 1-6; *see Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II. Judicial review of the Commissioner's final decision.

### A. Review standard.

The court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084; *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (internal quotation marks and citation omitted)). A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (internal quotation marks and citation omitted). The court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (internal quotation marks and citation omitted).

B. **Issues for judicial review.**

Plaintiff asserts the ALJ erred in (1) applying the treating-physician rule; (2) evaluating her fibromyalgia and in applying SSR 12-2p; and (3) evaluating her subjective complaints of pain. Doc. 10, at 5-14. These arguments contain overlapping parts. After careful evaluation, the Court concludes that substantial evidence does not exist to support the ALJ's decision.

III. **Analysis.**

A. **Treating physician.**

In considering Plaintiff's fibromyalgia, the ALJ stated: "[Plaintiff's] record also showed evidence of a spinal condition and fibromyalgia as impairments. However, the record shows that these conditions have either been successfully treated, controlled, stabilized, or otherwise do not more than minimally affect [Plaintiff's] ability to perform basic work activities." AR 19 (record citations omitted). The ALJ stated she included any limitations from these nonsevere impairments in the RFC. *Id.*

Plaintiff's treating physician, Fahed Hamadeh, M.D., provided an August 2017 medical source statement. *Id.* at 24. There, Dr. Hamadeh outlined his diagnoses of seropositive arthritis, positive ANA (antinuclear antibody), and fibromyalgia. *Id.* at 1477. He stated, "Patient has recurring flares and inflammation from these diagnoses that can make it **very** difficult,

5

maybe even impossible, for her to properly perform her daily work duties." *Id.* (emphasis in original).

In considering this opinion, the ALJ noted:

> Dr. Hamadeh opined that the claimant's impairments would make it very difficult, if not impossible for her to properly perform daily work duties. This opinion is given little weight because Dr. Hamadeh provide[d] no explanation or supporting evidence in support of his opinion. Further, the determination as to whether a claimant is disabled is an issue reserved to the Commissioner (see 20 CFR 404.1527 and 416.927).

*Id.* at 24.

When considering the opinion of an "acceptable medical source" such as Plaintiff's treating physician, the ALJ must first determine whether the opinion should receive "controlling weight" on the matter to which it relates. *See Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003). The ALJ must give a treating physician's opinion controlling weight if medically acceptable clinical or laboratory diagnostic techniques well-support it and the opinion is not inconsistent with other substantial evidence in the record. *Id.* (applying SSR 96-2p, 1996 WL 374188, at *2); *see also* 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2). If the opinion is deficient in either of these respects, the ALJ should not give it controlling weight.

Even if the opinion of a treating physician does not receive controlling weight, the ALJ must still give it deference. The ALJ must clearly state the weight she gives the opinion, even if she rejects it. The ALJ must specify the

reasons for the weight she affords the opinion, and she must closely tie her reasons to the factors the regulations specify. *See Watkins,* 350 F.3d at 1300-01. The Court should remand only if the ALJ fails to support the weight she assigned to the opinion of an acceptable medical source.

That the ALJ does not give an opinion controlling weight does not resolve the second, distinct inquiry. *See Langley v. Barnhart,* 373 F.3d 1116, 1120 (10th Cir. 2004) (holding that while absence of objective testing provided basis for denying controlling weight to treating physician's opinion, "[t]he ALJ was not entitled, however, to completely reject [it] on this basis"). The factors governing this second inquiry include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) how well the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether the physician is a specialist in the area on which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See id.* at 1119 (quotation omitted); 20 C.F.R. §§ 404.1527(c), 416.927(c). In applying these factors, the ALJ's findings must be "sufficiently specific to make clear to any subsequent reviewers the weight [she] gave to the treating source's medical opinion and

the reason for that weight." *Langley*, 373 F.3d at 1119 (internal quotation marks omitted).

So, when considering a treating-physician's opinion, "[a]n ALJ must either give controlling weight to a treating physician's opinion or 'articulate[ ] specific, legitimate reasons for his decision, finding, for example, the opinion unsupported by medically acceptable clinical and laboratory diagnostic techniques or inconsistent with other substantial evidence in the record.'" *Arterberry v. Berryhill*, 743 F. App'x 227, 229 (10th Cir. 2018) (quoting *Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009)).

As the Commissioner notes, the ALJ concluded Dr. Hamadeh's opinion did not receive controlling weight by giving it little weight. Doc. 15, at 14. "Although ordinarily the ALJ should have made explicit findings to this effect, [the Court is] not troubled by the . . . ALJ's determination" not to give Dr. Hamadeh's opinion controlling weight. *Andersen v. Astrue*, 319 F. App'x 712, 721 (10th Cir. 2009) (internal quotation marks and citation omitted). The Court agrees with the Commissioner that a disability determination is an issue reserved to him. Doc. 15, at 15; 20 C.F.R. §§ 404.1527(d), 416.927(d). And that Dr. Hamadeh did not provide specific work-related limitations. Doc. 15, at 15.

Beyond stating in boilerplate that Dr. Hamadeh pointed to no supporting evidence, neither did the ALJ provide any. AR 22-23. Nor did she point directly to contradictory evidence. The ALJ did not mention the several years

8

of treatment Dr. Hamadeh provided. She did not mention his assessment of fibromyalgia trigger points. She did not mention the frequency of the visits, Dr. Hamadeh's specialty, nor consider Plaintiff's reported activities of daily living in assessing the medical source statement. Standing alone, this error may not require reversal, but on remand, the ALJ should consider a more thorough analysis. *Arterberry*, 743 F. App'x at 229 ("In deciding how much weight to give a treating source's opinion, the ALJ must consider how 'long[ ] [the] treating source has treated [the claimant]' and whether it was 'long enough to have obtained a longitudinal picture of [the claimant's] impairment.'" (quoting 20 C.F.R. § 404.1527(c)(2)(i))); *see also* 20 C.F.R. § 414.927(c)(i).

### B. Plaintiff's fibromyalgia.

The ALJ acknowledged Plaintiff's "evidence" of fibromyalgia as an impairment and determined it to be non-severe. AR 19. In July 2016, James Burke, D.O., performed a physical examination of Plaintiff. *Id.* at 1070-77. He found eighteen of eighteen specifically identified tender point sites. *Id.* at 1077. Without acknowledging the diagnosis or results, the ALJ gave Dr. Burke's objective findings, "some weight" without providing more detail, just noting he did not provide any assessment of Plaintiff's functional limitations. *Id.* at 24. Dr. Burke did note Plaintiff could oppose her thumb to her fingertips, could manipulate small objects, and could effectively grasp tools. *Id.* at 1075.

9

Plaintiff argues the ALJ did not comply with SSR 12-2p in considering her fibromyalgia. Doc 10, at 10-12; *see* 77 Fed. Reg. 43640-01, 2012 WL 3017612 (July 25, 2012). From April 2014 through May 2016, treatment records from Dr. Hamadeh reflected Plaintiff was "moderately worse," "slightly improved" or both. AR 967, 973, 979, 984-85, 989, 994, 999, 1005, 1011, 1019, 1025, 1030, 1035, 1052, & 1057. Treatment records from Oklahoma Heart Hospital consistently referred to Plaintiff's fibromyalgia symptoms and signs. *See id.* at 1340 (March 2017, burning quality, "severity is severe," symptom "occurs constantly and chronically," "course is worsening and poor response to treatment," exacerbated by housekeeping, exertion and weather changes, and relieving factors were decreased activity and medication); 1365 (Feb. 2017, burning quality, "severity is moderate," symptom "occurs constantly and chronically," "course is unchanged and incomplete response to treatment," exacerbated by housekeeping, exertion and weather changes, and relieving factors were decreased activity and medication); 1377 (Jan. 2017, same). Rheumatology records from 2017 reflected similar complaints. *Id.* at 1424 (Jan. 2017, pain 7/10 and patient slightly worsened since last visit, "more flares," "deep ache," constant pain, responding well to medications with adequate pain control); 1429 (Apr. 2017, "more pain," pain 8/10, patient slightly worsened since last visit, "constant pain," and "occasional flares," and "deep ache," daily function "improved with medication").

The ALJ acknowledged some of Plaintiff's visits showed tenderness to palpitation, but that her exams were largely normal. *Id.* at 22. She referred to reports in early 2017 where Plaintiff reported her "regimen was effective in decreasing her pain." *Id.* But as noted, those same visits also showed her "pain was 7/10 since last visit," "overall patient has slightly worsened since last visit," "she has had more flares," she had "several fibromyalgia tender points," *id.* at 1424, 1426 (Jan. 2017, Saints Rheumatology); her fibromyalgia was "worsening and poor response to treatment," her "low back pain has been worse," her back and shoulder pain were 8/10, and overall her pain level was 4/10, *id.* at 1340, 1341-2 (Mar. 2017, Oklahoma Heart Hospital); that "pain is 8/10," and that she has "slightly worsened since last visit," *id.* at 1429 (Apr. 2017, Saints Rheumatology).

An ALJ must rely on more than a lack of objective supporting evidence when considering a claimant's fibromyalgia. *See Gilbert v. Astrue*, 231 F. App'x 778, 784 (10th Cir. 2007) ("[T]he lack of objective test findings noted by the ALJ is not determinative of the severity of [Plaintiff's] fibromyalgia."). In sum, the ALJ failed to address the existence of many other treatment records noting Plaintiff's fibromyalgia, her reported flares and pain levels, her varying responses to medications, as well as findings of tender points. *See Baker v. Bowen,* 886 F.2d 289, 291 (10th Cir. 1989) ("[T]he Act makes clear that the Secretary must consider all relevant medical evidence of record in reaching a

11

conclusion as to disability."). Although an ALJ need not discuss every piece of evidence, the record here fails to show that the ALJ considered all of the evidence with respect to Plaintiff's fibromyalgia. *See Clifton v. Chater,* 79 F.3d 1007, 1009-10 (10th Cir.1996); *Gilbert,* 231 F. App'x at 784.

### C. Subjective complaints of pain.

The ALJ discounted Plaintiff's credibility using this boilerplate:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for reasons explained in this decision.

AR 22.

In comparing Plaintiff's alleged ability to walk, stand, sit and lift, the ALJ pointed to her "largely normal" mental and physical examinations. *Id.* at 23. The ALJ found these records provided only "limited support" for Plaintiff's alleged symptoms. *Id.* And the ALJ refers to Plaintiff's "most recent treatment notes" (from a mental-health provider) that "reflect a disparity between her alleged limitations and clinical findings." *Id.* The ALJ reiterated that "objective evidence provides good reasons for questioning the reliability of [Plaintiff's] subjective complaints." *Id.* at 24. And in closing, the ALJ noted "that the evidence of [Plaintiff's] daily activities along with the objective

12

medical evidence . . . establishes that [she] has a greater sustained capacity than she alleges." *Id.* at 25.

"Credibility determinations are peculiarly within the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." *Diaz v. Secretary of Health & Human Servs.,* 898 F.2d 774, 777 (10th Cir.1990). Credibility findings must, however, "be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *McGoffin v. Barnhart,* 288 F.3d 1248, 1254 (10th Cir. 2002) (quotations and alteration omitted). Factors relevant to the credibility determination include the claimant's "medication[s] and [their] effectiveness, extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of [the claimant's] medical contacts, the nature of [the claimant's] daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, . . . and the consistency or compatibility of nonmedical testimony with objective medical evidence." *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir.1995) (internal quotation marks omitted); *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (listing the other factors relevant to symptoms an ALJ may consider); SSR 16-3p, 2016 WL 1119029, at *3 (Mar. 16, 2016).

The ALJ's decision referred to Plaintiff's activities of daily living but did not discuss the nature of those activities. AR 25. She earlier referred to Plaintiff's function report, but not to her activities. *Id.* at 22. Plaintiff reported

13

her children help her with most chores, from cooking dinner to helping wash her hair. *Id.* at 45-46. The ALJ does not mention Plaintiff's many medications, their side effects, the frequency of her medical treatment, and the various pain medication injections and treatments she has tried.

SSR 06-3p states, in part, that other source opinion evidence, such as those from spouses, parents, friends, and neighbors, should be evaluated by considering these factors: (i) nature and extent of the relationship; (ii) whether the evidence is consistent with other evidence; and (iii) any other factors that tend to support or refute the evidence. 2006 WL 2329939, at *5-6 (Aug. 9, 2006). The ALJ mentioned the Third Party Function Report but gave it "little weight," finding it cumulative because it "detail[ed] the same types of complaints and symptoms already alleged by the claimant." AR 24. Unsurprisingly, the ALJ rejected this evidence at least in part because "the objective evidence provides good reasons for questioning the reliability of [Plaintiff's] subjective complaints." *Id.* The ALJ should not reject all lay witness testimony with a blanket statement. She is perfectly capable of separating the evidence that is based on the personal observations of the lay witness and, on the other hand, the evidence presented by the lay witness that is based on claimant's subjective complaints. *See also Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989) ("[W]here the record on appeal is unclear as to

whether the ALJ applied the appropriate standard by considering all the evidence before him, the proper remedy is reversal and remand.").

## IV. Conclusion.

Substantial evidence does not support the ALJ's decision. The court reverses the Commissioner's decision and remands for further proceedings.

**ENTERED** this 15th day of January, 2020.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE